IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 13, 2010

## RICKY LYNN HILL v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Chester County**
**No. 07-444      Roy B. Morgan, Jr., Judge**

**No. W2009-01746-CCA-R3-PC  - Filed August 4, 2010**

The petitioner, Ricky Lynn Hill, appeals the Chester County Circuit Court's denial of his petition for post-conviction relief. The petitioner pled guilty to vehicular assault, DUI - fifth offense, attempted tampering with evidence, and leaving the scene of an accident. Pursuant to the plea agreement, the petitioner was sentenced to an effective sentence of seven years, eleven months, and twenty-nine days and released to intensive probation.[1] On appeal, the petitioner contends that his guilty plea was not entered knowingly and voluntarily based upon trial counsel's ineffectiveness in handling the case. Following review of the record, we affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Mike Mosier, Jackson, Tennessee, for the appellant, Ricky Lynn Hill.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Senior Counsel; James G. (Jerry) Woodall, District Attorney General; and Anna B. Cash and Alfred L. Earls, Assistant District Attorney General, for the appellee, State of Tennessee.

---

[1] It appears from the record that the petitioner's DUI - fifth offense conviction was later vacated and dismissed based on a violation of double jeopardy; thus, only the convictions for vehicular assault, attempted tampering with evidence, and leaving the scene of an accident with injury remained. For those convictions, the petitioner received sentences totaling five years, eleven months, and twenty-nine days.

# OPINION

## Procedural History

The underlying facts of the case are not made clear on the record before us, as the petitioner stipulated that a factual basis existed for the plea and no recitation of the facts was given at the plea hearing. We glean from testimony at the post-conviction hearing that the petitioner, while drinking, was involved in a traffic accident with a child on a bicycle. The petitioner left the scene and, subsequently, took his vehicle home and parked it in a location which was not visible to officers. He later turned himself in to the McNairy County Sheriff's Department even though the accident occurred in Chester County.

The record, however, is clear that the petitioner pled guilty to vehicular assault, DUI - fifth offense, leaving the scene of an accident, and attempted tampering with evidence. He received an effective sentence of seven years, eleven months, and twenty-nine days. Pursuant to the agreement, the petitioner was released "on time served" and placed on intensive probation after entry of the plea. However, the petitioner's probation was revoked in February 2009. From a reading of the record, it would seem that the DUI conviction was later vacated on double jeopardy grounds. Copies of the three remaining judgments of convictions show that the petitioner's effective sentence is now five years, eleven months, and twenty-nine days.

In June 2009, he filed a *pro se* petition for post-conviction relief, alleging an involuntary and unknowing guilty plea based upon the ineffective assistance of counsel. Following the appointment of counsel, an amended petition was filed. A hearing was later held at which the petitioner and trial counsel testified.

The petitioner testified that trial counsel was the second attorney to represent him and that he was hired after the initial attorney withdrew from the case. The petitioner went on to testify that he learned that three witnesses had given statements to the Tennessee Highway Patrol following the accident. According to the petitioner, these statements were never furnished to either him or trial counsel. He testified that trial counsel informed him that he could not "retrieve" the statements. The petitioner also complained that trial counsel had failed to interview any of these three witnesses, as well as Gary Miller, who saw the petitioner after the accident, the victim, or "the other girl on the bicycle" with the victim.

The defendant further contended that his plea was not knowingly entered because trial counsel failed to explain the offenses which he was charged with and allowed him to accept a plea agreement which violated double jeopardy principles. He stated that, even though his DUI conviction had been vacated and dismissed, the plea agreement was still not knowingly

-2-

entered. He went on to state that trial counsel failed to explain the range of punishment for each offense but only told him he would get the maximum punishment if he went to trial. While the petitioner acknowledged that he was sentenced as a Range I offender, he testified that trial counsel never discussed possible range classifications with him.

The petitioner also testified that, prior to his acceptance of the plea agreement, trial counsel informed him that he would be able to have his probation transferred to McNairy County. However, after he was convicted, he learned that would not be possible because McNairy County did not have an intensive probation program. The petitioner stated that, as a result, he was forced to live in Chester County for three months in a house with no electricity or water.

The petitioner also complained that trial counsel had not informed him that the decision of whether to testify if the case proceeded to trial was the petitioner's decision alone. He stated that trial counsel told him that he would not be testifying if the case went to trial.

On cross-examination, the petitioner acknowledged that, prior to the acceptance of the plea, the trial court explained all the rights available to him. Additionally, he remembered telling the trial court that he was satisfied with trial counsel's performance but now contends that was only because he "didn't know any better." He further acknowledged that trial counsel was successful in having certain evidence suppressed, which resulted in the State's offering a better plea agreement that included probation.

In his testimony, trial counsel stated that he was retained by the petitioner's father when they became unhappy with the first attorney's representation. Counsel stated that he received a copy of the file from prior counsel, and, because it was very close to the plea cutoff date, he was granted additional time to investigate the case and negotiate with the State. Trial counsel testified that he filed several motions in the case and took advantage of the State's open file policy with regard to discovery. He further stated that all the information he gathered was shared with the petitioner. Trial counsel filed two motions to suppress, one of which resulted in the suppression of the blood alcohol test performed on the petitioner. As a result, a more favorable plea offer was given, which the petitioner accepted "almost immediately." Trial counsel stated that he thoroughly discussed all available options with the petitioner and that the petitioner was ready to be released from jail.

Trial counsel specifically testified that the petitioner was made aware of all the facts in the case. Trial counsel went on to testify that, while he recommended to the petitioner that he not testify at trial, he never informed him that he could not testify. Trial counsel related that this advice was based upon his apprehension that the petitioner would "open the

door" and allow in evidence of his prior convictions.

Trial counsel acknowledged that the double jeopardy issue was his "mea culpa." He stated that he certainly did not mean to recommend that the petitioner accept an illegal sentence, but he said it was a simple mistake that no one realized. With regard to the witnesses which the petitioner complained of, trial counsel testified that he had a written statement from Gary Miller and was prepared to call him if the case went to trial. He also testified that he had spoken with Judy Harris, Barbara Wilson, and Frank Wilson, the three witnesses whom the petitioner contended that he did not see statements from. No questions were asked regarding interviewing or questioning of the victim or the other child present at the accident scene.

After hearing the evidence presented, the post-conviction court denied the petition. This timely appeal followed.

**Analysis**

On appeal, the petitioner contends that his guilty plea was not entered knowingly and voluntarily based upon the ineffective assistance of counsel. In evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). In making this determination, the reviewing court must look to the totality of the circumstances. *State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995); *see also Chamberlain v. State*, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). Indeed,

> a court charged with determining whether . . . pleas were "voluntary" and "intelligent" must look to various circumstantial factors, such as the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993).

Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. In this respect, such claims of ineffective assistance necessarily implicate that guilty pleas be voluntarily and intelligently made. *Hill*

*v. Lockhart*, 474 U.S. 52, 56  (1985) (citing *Alford*, 400 U.S. at 31, 91 S. Ct. at 164).

To succeed in a challenge for ineffective assistance of counsel, the petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases.  *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975).  Under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the petitioner must establish (1) deficient representation and (2) prejudice resulting from the deficiency.  In the context of a guilty plea, to satisfy the second prong of *Strickland*, the petitioner  must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Lockhart*, 474 U.S. at 59; *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).  The petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably-based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceeding. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994).  This deference to the tactical decisions of trial counsel, however, is dependant upon a showing that the decisions were made after adequate preparation.  *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

The issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact.  *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999).  "A trial court's *findings of fact* underlying a claim of ineffective assistance of counsel are reviewed on appeal under a *de novo* standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d).  However, *conclusions of law* are reviewed under a purely *de novo* standard, with no presumption of correctness. *Id*. at 458.

## I.  Ineffective Assistance of Counsel

On appeal, the petitioner asserts that he has raised several instances in which he believes that trial counsel was ineffective.  While he acknowledges that "many of these instances were disputed by the State's proof," he urges this court "to closely examine his allegations in the total context of the case."  A reading of his brief reveals that his main complaint appears to be that the victim and the child with her were not interviewed to determine the nature and extent of what their testimony would entail.  The petitioner submits "that this part of the investigation would certainly be crucial and critical to his defense and may well have had a large impact upon his decision to enter a plea of guilty or go to trial." He also contends that the consequences and ramifications of the original plea agreement were never adequately explained to him, which he claims is evidenced by his acceptance of an agreement which violated double jeopardy.  In denying relief on this issue, the post-

conviction court stated as follows:

> The Court agrees with the State as far as this claim by the [petitioner] only, not of [trial counsel] as he testified but only as the [petitioner]. There was some missing evidence. "There's some witnesses out there that could exonerate me, or information that would exonerate me." [That is] merely statements by the [petitioner] today, and [that is] not sufficient to carry the burden of proof by clear and convincing evidence.

> He really - - As he testified, the [petitioner] could not think of any other motions that needed to be filed. He referred back to the correction that had to be made on the DUI and the vehicular assault, but he could not think of another motion. He claimed [trial counsel] did not do what he should have done, and the fact of the matter is, I think the efforts of [trial counsel] speak for themselves. I mean, he made an effort over time to meet with his client on numerous occasions, I believe six or so. The motions were filed. It was a vigorous battle in this courtroom over the motions to suppress. [Trial counsel] was successful on the blood sample issue. After I heard argument and testimony, I did suppress that. We were on the threshold of the trial date when [trial counsel] was able to get with . . . the State after my rulings and come up with a new plea offer, and under those circumstances, based on my rulings, I listened to the plea offer and, of course, went over it thoroughly with the [petitioner] in open court.

> Again, [it is] clear from the proof today that the Court has to judge the credibility of the witnesses as they testify, and that means [I have] got to look to [the petitioner's] credibility as he testified today and what his recollection was versus his counsel's recollection and the whole record, and that is a big issue with the Court. I think [trial counsel] explained very completely his approach with [the petitioner] or any defendant as to whether or not they should take the stand. [It is] ultimately the defendant's decision whether or not they take the stand. . . .

> [Trial counsel] testified that he does not recall any statements that were withheld by the State, and in fact, he spoke with those witnesses according to his testimony under oath that [the petitioner] complains about. He said he spoke to all the witnesses, but [there is] no evidence to the best of his knowledge that was withheld, and [the petitioner] has not presented one piece of evidence, only his statements or claims today which anybody could make but has not substantiated anything that was not produced for purposes of trial

that would have made the difference in the outcome of the trial.

I find the previous correction that was made, that was found through previous defense counsel, . . . corrected [the petitioner's] situation. I ruled everything in favor of [the petitioner], gave him the benefit of everything on that, and, in fact, he still got the net effect of his plea bargain which [trial counsel] was able to negotiate to certainly his client's advantage. So there was no harm done there. And I apologize because it was not caught at the time, but this was at the threshold of the trial, and counsel had worked out that agreement, and I certainly approved it under those circumstances. But that has been corrected. [It is] a moot issue today and no harm or net harm occurred to this Petitioner at all.

Review of the record reveals nothing which preponderates against the court's findings. Initially, the petitioner's complaint regarding the fact that trial counsel failed to interview the victim or the other child was not substantiated by the proof. The petitioner merely made a bare allegation that these witnesses were not interviewed. In fact, at the post-conviction hearing, the petitioner failed to even question trial counsel as to whether he had conducted interviews of these witnesses or if any statements were contained in the discovery materials. During his testimony, the petitioner focused his complaints on trial counsel's failure to interview certain witnesses. Trial counsel testified and rebutted this with his statements that he did have a statement from Miller and that he had conducted interviews of the other three witnesses. The post-conviction court specifically accredited the testimony of trial counsel, which, as noted multiple times, is a determination which this court will not re-evaluate. Regardless, the petitioner presented no proof at the hearing as to what the testimonies of the victim or the other child would have been. As such, pursuant to *Black v. State*, the petitioner has failed to establish the prejudice prong of his complaint. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990) (when a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing). Thus, the petitioner is not entitled to relief on this ground.

Next, he complains that trial counsel was ineffective for failing to fully explain the ramifications of the guilty plea. In support of his argument, he points out that he was allowed to enter pleas to two offenses in violation of double jeopardy. However, as noted by the post-conviction court, this problem was remedied prior to the hearing on the matter. The two convictions were not allowed to stand and, as also noted by the court, the petitioner received the benefit of his bargain, thus precluding us from finding that any prejudice resulted. Trial counsel specifically testified that he and the petitioner reviewed all the charged offenses and possible punishments, and the court, prior to accepting the plea, also carefully reviewed these

facts with the petitioner. The petitioner has again failed to establish his entitlement to relief.

## II. Knowing and Voluntary Plea

In support of his argument that his plea was not entered knowingly and voluntarily, the defendant again relies upon the fact that he was allowed to plead guilty to charges which violated double jeopardy. He contends that it was "impossible for him to have been fully and competently advised as to all aspects of his plea by his trial counsel if he was allowed to enter an illegal sentence." In addressing this issue, the post-conviction court stated:

> [t]he Court was very thorough in its review of the guilty plea with the petitioner and fully explained all of the rights that he was entitled to and that he would be waiving. The Court thoroughly explained . . . in detail the contents of the plea agreement and the petitioner was questioned at length regarding his knowledge of the plea bargain and his desire to accept the plea agreement. The Court was very specific in its question to the [petitioner]; and the [petitioner] assured the Court on several occasions that he understood the plea agreement and that he wanted to accept the agreement.

> The Court finds that the [petitioner] did knowingly, freely and voluntarily enter the plea agreement and that there was no abridgement of any constitutional right by trial counsel that in any way prejudiced the petitioner.

Review of the record reveals that these findings are supported. Trial counsel testified that he reviewed the plea agreement with the petitioner in detail, and the petitioner testified under oath that he and trial counsel had fully discussed the case and the plea offer. Additionally, a reading of the guilty plea transcript reveals that the court was very thorough in its questioning of the petitioner with regard to the entire acceptance of the plea agreement and the petitioner's understanding of his rights. Looking to the totality of the circumstances in this case, we are compelled to agree with the post-conviction court's ruling. While the petitioner's entire prior record of criminal offenses is not contained in the record, we must assume based upon his being charged with DUI-5th offense, that this was not his first encounter with the criminal justice system. Moreover, based upon our previous findings, we have concluded that trial counsel provided more than effective representation to the petitioner. The record supports that trial counsel discussed at length with the petitioner the charges against him, the strength and weakness in the State's case, and the advantages and disadvantages of proceeding to trial. Additionally, trial counsel gave specific testimony, which the post-conviction court accredited, that the petitioner wanted to accept the agreement because it provided for his immediate release from confinement.

We agree with the State's argument that the petitioner's claim is "merely a re-characterization of his claim that [trial counsel] was ineffective for allowing him to enter a plea to both DUI and vehicular assault." Further, as we have already concluded, the petitioner has failed to establish the prejudice prong of that ineffectiveness claim, as the DUI conviction was vacated and dismissed. Therefore, reviewing the issue under the totality of the circumstances, we are unable to conclude that the petitioner has established an unknowing or involuntary plea.

## CONCLUSION

Based upon the foregoing, the denial of post-conviction relief is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE